# FOR PUBLICATION



FILED
Mar 13 2014, 7:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.L., ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No. 49A04-1306-JV-297 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Geoffrey A. Gaither, Magistrate
Cause No. 49D09-1301-JD-102

**March 13, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

J.L. appeals the juvenile court's true finding that he committed a delinquent act, which, if committed by an adult, would constitute child molesting, a class C felony. J.L. raises two issues, which we revise and restate as:

I.      Whether the court abused its discretion in admitting J.L.'s statement to police; and

II.     Whether the evidence is sufficient to sustain his adjudication as delinquent.

We affirm.

FACTS AND PROCEDURAL HISTORY

During the weekend of May 26, 2012, J.L., who was twelve years old, was spending time with his cousins F.R., who was six years old, D.R., and A.R., who were staying the weekend with their father. Following a beach outing, J.L. asked if he could spend the night at the house of the other boys' father, and both fathers agreed. That night, while the boys were watching TV in their father's bedroom, J.L. asked F.R. "do you want to have [a] party," and F.R. replied "yeah." Transcript at 11-12. J.L. then asked F.R. if he wanted "to have a gay party," and F.R. said "no." Id. at 12. F.R. understood that when J.L. asked to have a gay party, it meant that J.L. wanted to touch F.R.'s "private." Id. at 18. J.L. then "kept saying yeah . . . lets have one," F.R. continued to watch TV, and J.L. then "touched [F.R.'s] private," which was a word F.R. used to describe his penis, by placing his hand over F.R.'s clothing and squeezing F.R.'s penis for "one minute." Id. at 12, 15. J.L. asked "do you like," and F.R. responded "no." Id. at 16. Later that night, F.R. attempted to wake his father to tell him what had occurred, but J.L. "grabbed [his] arm and he didn't let [him] go tell [his] dad." Id. at 17. When F.R.

2

returned to his mother that Sunday he told her what had happened, and she called the police.

On January 14, 2013, Detective Robin Myers with the Indianapolis Metropolitan Police Department conducted an interview with J.L. regarding the incident. Also present at the interview were J.L.'s mother, who does not speak English, and another officer to interpret for J.L.'s mother. At the outset of the interview, Detective Myers informed J.L. and his mother that they were being video recorded and identified the camera. Detective Myers read the first portion of a Juvenile Waiver form, titled "Warning of Rights," which provided as follows:

Before we ask you any questions, you must understand your rights.

1. You may have one or both of your parents present.

2. You have the right to remain silent.

3. Anything you say can be used as evidence against you in court.

4. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning.

5. If you cannot afford a lawyer and you want one, one will be appointed for you by the court before questioning.

6. If you decide to answer questions now, without a lawyer present, you will still have the right to stop answering at any time. You will also the [sic] right to stop answering at any time until you talk to a lawyer.

State's Exhibit 3; State's Exhibit 2 at 23:08-25:52. The other officer translated the Warning of Rights portion in Spanish for J.L.'s mother, and J.L.'s mother was provided with a Spanish-language version of the Juvenile Waiver form. Before reading the

3

Warning of Rights, Detective Myers explained that she would read them and then give J.L. and his mother "time if [they] want to talk together." State's Exhibit 2 at 22:50-22:58. Also, regarding J.L.'s right to remain silent, Detective Myers explained that if he did not "want to answer [her] questions [], [he did not] have to answer," and J.L. replied that her explanation made sense to him. Id. at 23:50-24:00.

After advising J.L. and his mother of J.L.'s rights, Detective Myers asked J.L. to read aloud the final portion of the Warning of Rights as follows:

> My parents and I have read this statement of my rights and it has been read to us, and my parents and I understand what my rights are. My parents and I have been allowed time by ourselves without the presence of a police officer to discuss the waiver of my rights before signing the waiver of rights.

State's Exhibit 3; State's Exhibit 2 at 27:21-27:48. Afterward, Detective Myers asked J.L. and his mother: "Do you [J.L. and his mother] want to talk before we go any further? Because I want to ask him questions about the two other kids. But right now do you two need to talk about anything before we make a decision?" State's Exhibit 2 at 27:57-28:16. Following the interpreting officer's recitation to J.L.'s mother, J.L. and his mother briefly conferred, J.L.'s mother spoke in Spanish, and the interpreter then stated to Detective Myers that "yes, they want to continue." Id. at 28:43-28:46. Detective Myers then asked J.L. to make sure that he wanted to continue, and J.L. responded "yeah." Id. at 28:57. J.L. and his mother then signed and dated the Warning of Rights portion of the Juvenile Waiver.[1]

---

[1] Specifically, both J.L. and his mother signed English-language and Spanish-language versions of the Juvenile Waiver document.

Detective Myers then presented the second portion of the Juvenile Waiver form, titled "Waiver," to J.L. and had him read the following language aloud:

1. I have read the above rights and I understand and know what I am doing.

2. I have been allowed time to consult with my parents or legal guardian without a police officer present.

3. I expressly waive the above rights and will answer any questions.

State's Exhibit 3; State's Exhibit 2 at 31:59-32:21. Detective Myers then asked J.L. if he wanted to answer questions about the incident, and J.L. replied "um, sure." State's Exhibit 2 at 32:34. Detective Myers again asked J.L.'s mother if she was "agreeable" to have J.L. speak with her, and J.L.'s mother agreed. Id. at 33:08-33:12. J.L. and his mother signed and dated the waiver portion of the Juvenile Waiver. During the interview, J.L. admitted that he touched F.R.'s penis.

On January 16, 2013, the State alleged J.L. a delinquent child for an act of child molesting, which would be a class C felony if committed by an adult. On April 8, 2013, the juvenile court held a fact-finding hearing in which evidence consistent with the foregoing was presented. During the hearing, J.L.'s counsel objected when the State moved to admit the video recording of the interview as State's Exhibit 2, arguing that a "meaningful consultation" between J.L. and his mother did not occur in violation of Ind. Code § 31-32-5-1(2)(C) because Detective Myers did not exit the room or turn off the video recorder. Transcript at 32. The court admitted State's Exhibit 2 over J.L.'s objection. On April 19, 2013, the court entered a true finding as to one count of child molesting, a class C felony if committed by an adult. On May 29, 2013, the court held a

5

dispositional hearing and ordered that J.L. be placed on probation with the following special conditions: (1) that he complete sexual offender evaluation/counseling; (2) that he abide by a 9:00 p.m. parent-monitored curfew; and (3) that he have no direct or indirect contact with F.R. or unsupervised contact with any child under the age of 13, nor have contact with any other person or place not pre-approved by parents.[2]

## DISCUSSION

### I.

The first issue is whether the court abused its discretion in admitting J.L.'s statement to police. The admission and exclusion of evidence is a matter within the sound discretion of the trial court, and we will review only for an abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted).

This issue concerns whether J.L.'s waiver of rights was proper, which is governed by Ind. Code § 31-32-5-1 and which provides:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

* * * * *

(2)     by the child's custodial parent, guardian, custodian, or guardian ad litem if:

---

[2] The court also issued a parental participation order for J.L.'s parents.

| (A) | that person knowingly and voluntarily waives the right; |
|---|---|
| (B) | that person has no interest adverse to the child; |
| (C) | meaningful consultation has occurred between that person and the child; and |
| (D) | the child knowingly and voluntarily joins with the waiver . . . . |

Further, the next section in the Indiana Code, Ind. Code § 31-32-5-2, addresses a child's ability to waive his right to the "meaningful consultation" provided by Ind. Code § 31-32-5-1(2)(C), stating that he may do so if:

| (1) | the child is informed of that right; |
|---|---|
| (2) | the child's waiver is made in the presence of the child's custodial parent, guardian, custodian, guardian ad litem, or attorney; and |
| (3) | the waiver is made knowingly and voluntarily. |

The State bears the burden of proving beyond a reasonable doubt that the juvenile received all of the protections of Ind. Code § 31-32-5-1 and that both the juvenile and his or her parent knowingly, intelligently, and voluntarily waived the juvenile's rights. D.M. v. State, 949 N.E.2d 327, 334-335 (Ind. 2011). In reviewing a court's denial of a motion to suppress a confession, we do not reweigh the evidence but instead examine the record to determine whether there is substantial evidence of probative value to support that decision. Id. at 335. We consider any conflicting evidence in a light most favorable to the juvenile court's decision, along with any substantial uncontested evidence. Id. We will uphold the decision if it is supported by "a reasonable view of the evidence." Id.

7

J.L. argues that the statement "was improperly admitted because he was denied the opportunity for a meaningful consultation with his mother when the police officers never left J.L. and his mother alone and they remained in a room in which they were being continuously videotaped." Appellant's Brief at 7. J.L. asserts that the circumstances here run afoul of this court's opinion in S.D. v. State, 937 N.E.2d 425 (Ind. Ct. App. 2010), trans. denied. J.L. also argues that the erroneous admission of his statement was not harmless, noting that charges were not filed and an arrest was not made for several months following the incident, "which is powerful evidence of the weakness of the State's case," that he was arrested after giving the statement, and that the State emphasized J.L.'s confession in its closing argument. Id. at 10.

The State contends that this case is distinguishable from S.D. "because here J.L. and his mother were provided with the express opportunity for meaningful consultation, which they declined." Appellee's Brief at 12. The State argues that "[o]nce such an opportunity is provided, it is up to the juvenile and the parent to use this opportunity to their advantage." Id. at 13 (citing D.M., 949 N.E.2d at 336). The State notes that the Indiana Supreme Court has observed, "[o]fficers are unable, and cannot be expected, to force substantive communication between children and parents." Id. at 14 (quoting Trowbridge v. State, 717 N.E.2d 138, 148 (Ind. 1999), reh'g denied). The State also notes that "J.L. does not claim that the police used any coercion, force, or inducement to secure the waiver from either J.L. or his mother." Id. Finally, the State argues that even if admitting the video of J.L.'s statement including his confession was in error, such error

8

was harmless because the statements "were merely cumulative of F.R.'s testimony that J.L. touched and squeezed his private." Id. at 15.

In his reply brief, J.L. argues that the State's attempt to distinguish S.D. is unavailing and suggests that the rule of S.D. is simply that "police officers can and must leave the room and turn off video cameras to make any consultation *meaningful*," which was not done in this case. Appellant's Reply Brief at 3.

In S.D., fifteen or sixteen-year-old S.D., while accompanied by his guardian, was subjected to a police interview in the office of a detective regarding allegations that S.D. had touched the vagina of a five or six-year-old girl who had been in the guardian's care. 937 N.E.2d at 427. The detective noted at the outset that they were being video recorded and pointed out the cameras in the room, and he advised S.D. and his guardian of S.D.'s Miranda rights which they both signed. Afterward, the detective stated that he would leave the room and allow S.D. and his guardian to discuss whether S.D. would agree to talk and whether the guardian would remain in the room, and he left the room while they discussed the matter. Id. at 427-428. The video cameras were never turned off while S.D. and his guardian discussed what they would do. Id. at 431. Ultimately, S.D. and the guardian decided that S.D. would speak to the detective, they both signed a waiver of rights form, and during the interview S.D. admitted that he touched the girl's vagina with his fingers. Id. at 428. The juvenile court entered a true finding for child molesting as a class C felony. Id. at 429.

On appeal, we began by observing that "[t]he special status accorded juveniles in other areas of the law is fully applicable in the area of criminal procedure" and that here,

"[t]o give effect to that status in the context of waiving intricate, important, and long established Fifth and Sixth Amendment rights, we require that a juvenile be afforded a meaningful opportunity to consult with a parent or guardian before the solicitation of any statement."[3] Id. We noted:

> The meaningful consultation requirement of the juvenile waiver of rights statute is a safeguard additional to the requirement of adult waivers that they be knowingly, voluntarily, and intelligently made. Cherrone v. State, 726 N.E.2d 251, 254 (Ind. 2000). The purpose of the meaningful consultation requirement is to "*afford the juvenile a stabilizing and comparatively relaxed atmosphere* in which to make a serious decision that could affect the rest of his life." Patton v. State, 588 N.E.2d 494, 496 (Ind. 1992).

> Consultation can be meaningful only in the *absence of police pressure*. Washington v. State, 456 N.E.2d 382, 383 (Ind. 1983); see also Hall[ v. State, 264 Ind. 448, 452, 346 N.E.2d 584, 587 (1976)] ("[A] meaningful consultation can only occur in the absence of the neutralizing pressures which result from police presence."). *Privacy is essential* to a meaningful consultation. See Fowler[ v. State, 483 N.E.2d 739, 743 (Ind. 1985)] ("The level of privacy accorded appellant and his mother for their consultation was sufficient to permit discussion on the waiver decision.")[, reh'g denied]. The meaningful consultation requirement is met only when the State demonstrates actual consultation of a meaningful nature or the *express opportunity* for such consultation, which is then forsaken by the juvenile in the presence of the proper authority, so long as the juvenile knowingly and voluntarily waives his constitutional rights. Cherrone, 726 N.E.2d at 254.

Id. at 431 (emphases added).

---

[3] We note that a specific challenge to Ind. Code § 31-32-5-1(2)(C)'s meaningful consultation requirement was not made at S.D.'s delinquency hearing, and we addressed the issue under the fundamental error exception. 937 N.E.2d at 429.

Also, in S.D. we began our analysis by observing that "when a juvenile who is not in custody gives a statement to police, neither the safeguards of Miranda warnings nor the juvenile waiver statute is implicated" and that there was a threshold question regarding whether S.D. was in custody. Id. at 430. In this case, the State does not challenge whether J.L. was "in custody" when he was interviewed by Detective Myers or that the juvenile waiver statute applied.

10

In applying the law to the facts of S.D., we noted that although the detective left S.D. and his guardian in the interview room to discuss whether S.D. would agree to talk, "the consultation between S.D. and [his guardian] was videotaped, and more importantly, [they] were aware of the video cameras in the room." Id. We held "that the video cameras constituted an improper police presence and infringed on the privacy necessary to any meaningful consultation." Id. In so holding, we discussed an argument by the State that facts of the case, including that S.D. stated that it "did not matter" to him whether his guardian remained in the room, suggested that neither the guardian nor S.D. "placed a high premium on a consultation completely free of police presence," and we noted that "an equally plausible explanation is that S.D. and [his guardian] did not place a 'high premium' on the consultation because, in light of the video cameras, they knew the consultation would not be private." Id. at 432. We also held that the error was not harmless because the "core evidence against S.D. consisted of his confession and [the victim's] testimony that he touched her peepee, which was then impeached with the admission of her second interview with the DCS, where she stated that only her father had touched her inappropriately." Id. We concluded that "[g]iven the dearth of evidence against S.D., we find the admission of S.D.'s confession when he had been deprived of meaningful consultation to be so prejudicial to the rights of S.D. as to make a fair trial impossible." Id.; see also D.M., 949 N.E.2d at 336-338 (holding that there was substantial evidence of probative value that D.M. and his mother were afforded an opportunity for meaningful consultation free from police pressure where the police officer advised them of D.M.'s rights, they acknowledged that they understood the rights

11

and signed the advisement section of the juvenile waiver form, and immediately afterward the officer exited the police vehicle in which they were sitting, "showed them that he was turning off his tape recorder" and that he would take it with him while they talked, told them that "they could have as much time to talk as they needed," and walked "about 20 feet away from the car to talk to some of the uniformed officers," and noting specifically that "had [the officer] recorded them, the confession would have been excluded under the precedent of the Court of Appeals" (citing <u>Bryant v. State</u>, 802 N.E.2d 486, 494 (Ind. Ct. App. 2004) (secretly recording consultation was impermissible police presence), <u>trans.</u> <u>denied</u>; <u>S.D.</u>, 937 N.E.2d at 431)).

Based upon our statements in <u>S.D.</u>, we find that J.L. and his mother were not provided the opportunity for a meaningful consultation. The video camera in the interview room was never turned off to give them privacy free of police pressure. Also, although Detective Myers asked them if they wanted "to talk before we go any further," she did not ever offer to leave the room for them to consult. State's Exhibit 2 at 27:57-28:16. Unlike the juveniles in <u>S.D.</u> or <u>D.M.</u>, however, J.L. expressly agreed to forego a meaningful consultation, which is permissible under Ind. Code § 31-32-5-2. As noted above, Ind. Code § 31-32-5-2 provides that a child's right to a meaningful consultation under Ind. Code § 31-32-5-1(2)(C) may be waived by the child if the child is informed of the right, the waiver is made in the presence of the child's custodial parent, guardian, custodian, guardian ad litem, or attorney, and the waiver is made knowingly and voluntarily. Here, Detective Myers informed J.L. of the right, and the waiver was made

in the presence of his mother. We then must determine if the waiver was made knowingly and voluntarily.

In D.M., the Indiana Supreme Court discussed voluntariness in the related context of knowingly and voluntarily waiving one's Miranda rights:

> In determining the voluntariness of a Miranda waiver, we examine the totality of the circumstances surrounding the interrogation to determine whether the suspect's choice "was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and whether the waiver was "made with a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." [Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135 (1986)]; see also [Crain v. State, 736 N.E.2d 1223, 1230 (Ind. 2000)] (reviewing totality of the circumstances to ensure that waiver was "not induced by violence, threats, or other improper influences that overcame the defendant's free will"); cf. [Fare v. Michael C., 442 U.S. 707, 725, 99 S. Ct. 2560 (1979)] (holding that the totality-of-the-circumstances test applies to juvenile waivers)[, reh'g denied]. Relevant considerations include the juvenile's physical, mental, and emotional maturity; whether the juvenile or his or her parent understood the consequences of the juvenile's statements; whether the juvenile and his or her parent were informed of the delinquent act for which the juvenile was suspected; the length of time the juvenile was held in custody before consulting with his or her parent; whether there was any force, coercion, or inducement; and whether the juvenile and his or her parent had been advised of the juvenile's Miranda rights. I.C. § 31-32-5-4; see also Michael C., 442 U.S. at 725-27, 99 S. Ct. 2560.

D.M., 949 N.E.2d at 339-340. We find that these statements apply with equal force in determining whether a juvenile knowingly and voluntarily waived his right to a meaningful consultation.

The totality of the circumstances surrounding J.L.'s decision to forego engaging in a meaningful consultation with his mother lead us to conclude that the waiver was not made knowingly and voluntarily. As already noted, Detective Myers did not offer to step out of the interview room, nor did she offer to turn off the video camera recording them.

13

Importantly, we think it probable that J.L. and his mother did not even understand that they were entitled to such privacy for the meaningful consultation. Detective Myers merely asked J.L. and his mother if they "want[ed] to talk before we go any further?" State's Exhibit 2 at 27:57-28:16. After J.L. signed the Warning of Rights portion of the Juvenile Waiver, Detective Myers had him read aloud the Waiver portion, and after he finished she asked J.L. if he wanted to answer questions and he replied "um, sure." Id. at 32:34. During this time, J.L. appeared to be uncomfortable and he frequently covered his face with his hand to the point that his mother lectured him about needing to look Detective Myers in the eye when speaking to her. J.L.'s demeanor was such that his response was equivocal at best. These circumstances lead us to conclude that J.L.'s waiver of his right to a meaningful consultation was not knowingly and voluntarily made.[4]

Nonetheless, where a statement is obtained involuntarily and is erroneously admitted at trial or, in this case, a juvenile delinquency hearing, such errors are subject to

___

[4] The opinion concurring in the result in this case observes a statement in Trowbridge, similarly cited by the State, that "[o]fficers are unable, and cannot be expected, to force substantive communication between children and parents." *Infra* at 23 (quoting Trowbridge, 717 N.E.2d at 148). We observe, however, that in Trowbridge, the detective expressly "offered to turn the tape off and leave the room." 717 N.E.2d at 145. Trowbridge and Frost, his mother, declined the detective's "offer of a private conference," and they both signed a waiver of Trowbridge's right to remain silent. Id. Also, "[s]hortly after Frost left the interrogation room," another detective "intervened and told Trowbridge that they were going to leave the room and give Trowbridge a 'break' with his mom, an opportunity to speak to her in 'confidence,' before they started questioning him." Id. Trowbridge and Frost were then left in the room together for four and one-half minutes before Frost left the room and the consultation was over. Id.

In holding that Trowbridge was afforded a meaningful opportunity to consult, the Indiana Supreme Court observed that the juvenile defendant and his mother were "left alone in the interrogation room" for the purpose of engaging in meaningful consultation and "chose not to consult," before making the statement that "[o]fficers are unable, and cannot be expected, to force substantive communication between children and their parents." Id. at 148. We agree that officers are unable to force a child and their parent or guardian to discuss whether the child should waive his or her right to remain silent and speak to police, but Indiana case law interpreting Ind. Code §§ 31-32-5-1, -2 requires that police provide them with an *opportunity* to do so before such right may be waived.

harmless error analysis. R.W. v. State, 975 N.E.2d 407, 411 (Ind. Ct. App. 2012), trans. denied. The violation of J.L.'s rights implicates his constitutional rights under the Fifth and Sixth Amendments, and accordingly we review the error *de novo*, in which such error "must be 'harmless beyond a reasonable doubt.'" Alford v. State, 699 N.E.2d 247, 251 (Ind. 1998) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), reh'g denied). "A reviewing court must be satisfied that the State has 'met its burden of demonstrating that the admission of the confession . . . did not contribute to [the] conviction.'" Id. (quoting Arizona v. Fulminante, 499 U.S. 279, 296, 111 S. Ct. 1246, 113 L.Ed.2d 302 (1991), reh'g denied). To determine that the error did not contribute to the conviction, or in this case the true finding, we must find that the error was unimportant in relation to "everything else" the fact-finder considered on the issue. Id. (quoting Yates v. Evatt, 500 U.S. 391, 403, 111 S. Ct. 1884, 114 L.Ed.2d 432 (1991), disapproved on other grounds by Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991)).

Even applying this "demanding standard," id., we find that the error was harmless. At the delinquency hearing, F.R. gave detailed testimony regarding the events of the night in question, in which he testified that J.L. asked him "do you want to have [a] party," F.R. replied "yeah," and then J.L. asked him if he wanted "to have a gay party," and F.R. said "no." Transcript at 11-12. F.R. testified that when J.L. asked to have a gay party, it meant that J.L. wanted to touch F.R.'s "private" and that he learned about gay parties from J.L. Id. at 18. F.R. testified that J.L. "kept saying yeah . . . lets have one," F.R. continued to watch TV, and J.L. then touched F.R.'s penis by placing his hand over

15

F.R.'s clothing and squeezing it for "one minute." Id. at 12, 15. J.L. asked "do you like," and F.R. responded "no." Id. at 16. Later that night, F.R. attempted to wake his father to tell him what had occurred, but J.L. "grabbed [his] arm and he didn't let [him] go tell [his] dad." Id. at 17.

We conclude that although J.L.'s waiver of his opportunity for a meaningful consultation was not knowingly and voluntarily made, that the testimony of F.R. was sufficiently detailed and probative which rendered the videotaped confession relatively unimportant, and that accordingly the error was harmless beyond a reasonable doubt.

II.

The next issue is whether the evidence is sufficient to sustain J.L.'s adjudication as a delinquent. When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. J.S. v. State, 843 N.E.2d 1013, 1016 (Ind. Ct. App. 2006), trans. denied. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. Id.

The offense of child molesting as a class C felony is governed by Ind. Code § 35-42-4-3, which provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older

16

person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." The State in its petition alleging J.L. to be a delinquent child stated that the touching was performed with the intent to arouse or satisfy the sexual desires of J.L. only. Thus, to adjudicate J.L. to be a delinquent for committing acts that would constitute child molesting as a class C felony if committed by an adult, the State was required to prove that J.L. performed or submitted to any touching of either J.L. or F.R., a child under fourteen years of age, with the intent to arouse J.L.

J.L. argues that although case law is clear that the intent element of child molesting "may be inferred from evidence that the accused intentionally touched a child's genitals," this is not "categorically true of young defendants . . . ." Appellant's Brief at 6 (citing Kirk v. State, 797 N.E.2d 837, 841 (Ind. Ct. App. 2003), reh'g denied, trans. denied). J.L. argues that "[y]outh matters" and notes that "[a]t common law children ages seven to fourteen were rebuttably presumed to be incapable of responsibility for their actions." Id. (citing WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., HANDBOOK ON CRIMINAL LAW § 4.11, at 398 (2d ed. 1986)).

The State argues that it presented sufficient evidence to sustain J.L.'s true finding, arguing specifically that "F.R. testified that J.L. attempted to persuade F.R. to have a 'gay party' and then touched and squeezed F.R.'s penis over his pants, asking F.R. if he liked it" and that it was "certainly reasonable for the trial court to infer that J.L. knew what the term meant and that J.L. intended to arouse or satisfy his sexual desires when he touched and squeezed F.R.'s penis." Appellee's Brief at 7-8. The State also argues that J.L.'s suggestion that youth matters is immaterial because "[t]his Court has addressed concerns

17

about adjudicating youthful offenders for child molesting" and that J.L.'s conduct is akin to other instances which have resulted in true findings. Id. at 9. The State argues J.L.'s argument regarding the rebuttable presumption at common law is equally unavailing because "[w]hen the legislature amended the child molestation statute in 1994, it did away with the requirement that the offender be of any particular age." Id. at 10.

This court has held that "the Legislature intended that minors under the age of fourteen may be adjudged to be juvenile delinquents under the child molesting statute." W.C.B. v. State, 855 N.E.2d 1057, 1061 (Ind. Ct. App. 2006) (citing State v. J.D., 701 N.E.2d 908, 910 (Ind. Ct. App. 1998), trans. denied), trans. denied. However, "'in situations where there clearly is no criminal intent, such as where very young children engage in innocent sexual play, an allegation of juvenile delinquency based upon such play would be inappropriate.'" Id. (quoting J.D., 701 N.E.2d at 909-910). Also, this court has observed that Ind. Code § 35-42-4-3 requires that the offender must be older than the victim, noting that the purpose of the statute "is to prohibit the sexual exploitation of children by those with superior knowledge or experience who are therefore in a position to take advantage of children's naivety." C.D.H. v. State, 860 N.E.2d 608, 612 (Ind. Ct. App. 2007), trans. denied. Further, "'age differential is an important factor that may and should be considered' when determining a minor's criminal liability under a statute proscribing lewd or lascivious conduct with a child." Id. (quoting In re P.M., 592 A.2d 862, 864 (Vt. 1991)).

When a child is accused of child molestation, evidence that the accused intentionally touched the younger child's genitals might not be, by itself, sufficient to

18

establish that the touching was committed with the intent to arouse or satisfy sexual desire. Although "the intent to arouse or satisfy sexual desires required to support a class C felony child molesting conviction <u>may</u> be inferred from evidence that the accused intentionally touched a child's genitals," <u>Spann v. State</u>, 850 N.E.2d 411, 414 (Ind. Ct. App. 2006) (emphasis added), our standard also provides that the "intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." <u>Bowles v. State</u>, 737 N.E.2d 1150, 1152 (Ind. 2000). Further, the "intent to gratify required by the statute must coincide with the conduct; it is the purpose or motivation for the conduct." <u>DeBruhl v. State</u>, 544 N.E.2d 542, 546 (Ind. Ct. App. 1989). Therefore, in assessing whether the evidence is sufficient to establish that J.L. touched F.R. with the intent to arouse or satisfy sexual desire, we will consider whether the circumstantial evidence and the actor's conduct and the natural and usual sequence to which such conduct usually points supports the inference.

Here, the evidence most favorable to the true finding reveals that J.L., who was twelve years old, asked six-year-old F.R. if he wanted "to have a gay party," and F.R. said "no." Transcript at 12. J.L. persisted, F.R. did not cooperate, and J.L. then touched F.R.'s penis by placing his hand over F.R.'s clothing and squeezing F.R.'s penis for "one minute." <u>Id.</u> at 15. J.L. asked F.R. if he liked it, and F.R. responded "no." <u>Id.</u> at 16. Later that night, F.R. attempted to wake his father to tell him what had occurred, but J.L. prevented him from doing so.

J.L. argues that the circumstances of this case are comparable to J.H. v. State, in which this court reversed an adjudication finding J.H. to be delinquent for committing acts which would constitute child molesting as a class C felony because the State failed to prove intent to arouse or satisfy the juvenile defendant's sexual desires. 655 N.E.2d 624, 626 (Ind. Ct. App. 1995), trans. denied. In J.H., the alleged offender was a twelve-year-old female who used her finger to flick two boys, ages four and five, on the penis hard enough to hurt them while they were fully clothed. Id. at 625. We held that "there is no natural consequence associated with a twelve-year-old girl flicking little boys on the penis hard enough to hurt them. It is certainly mean, and it might constitute battery, but it alone is insufficient to amount to child molesting." Id. at 626. Conversely, here the evidence reveals that J.L. taught F.R. about "gay parties" and asked F.R. if he enjoyed it when J.L. touched his penis. Such conduct supports the inference that J.L. intended to arouse or satisfy his sexual desires.

Under these circumstances, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that J.L. committed an act that would constitute child molesting as a class C felony if committed by an adult.

CONCLUSION

For the foregoing reasons, we affirm the juvenile court's true finding that J.L. committed a delinquent act, which, if committed by an adult, would constitute child molesting, a class C felony.

Affirmed.

ROBB, J., concurs.

20

BARNES, J., concurs in result with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

J.L.,                                          )
                                               )
    Appellant-Respondent,              )
                                               )
        vs.                       )          No. 49A04-1306-JV-297
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Plaintiff.                )

**BARNES, Judge, concurring in result with separate opinion**

I concur in result. Although my colleagues affirm the adjudication of delinquency, I differ with them as to the route they took to get there. I believe that the meaningful opportunity to confer was extended, considered, and knowingly and voluntarily waived as contemplated by Indiana Code Section 31-32-5-2.

Detective Myers first explained to J.L. and his mother that she would read the Warning of Rights form and then give them time to talk together. After informing J.L. and his mother of J.L.'s rights, Detective Myers asked J.L. and his mother if they wanted to talk before the interview went any further. The two briefly conferred and confirmed that they wanted to continue. J.L. then read aloud the Waiver portion of the form, which included the statement, "I have been allowed time to consult with my parents or legal

22

guardian without a police officer present." Ex. 3. J.L. and his mother agreed that he would talk to Detective Myers, and J.L. signed the form.

After reviewing the video of Detective Myers informing J.L. and his mother of J.L.'s rights, the trial court stated, "I can't recall when I have seen a more methodical approach to that." Tr. p. 50. I agree. As for the majority's concerns about J.L.'s demeanor, I note that he touched his face with his hands throughout the interview, not only when he was questioned regarding the opportunity to confer with his mother. I do not agree that his response was equivocal.

I am fully aware that the protections of the juvenile waiver statute are intended to ensure that juveniles have the opportunity to engage in meaningful consultation with their parent or guardian regarding the allegations, the circumstances of the case, and the ramifications of their responses to police questioning and confessions. Trowbridge v. State, 717 N.E.2d 138, 148 (Ind. 1999). However, "Officers are unable, and cannot be expected, to force substantive communication between children and their parents." Id. Under the totality of circumstances, I believe the trial court properly determined that both J.L. and his mother knowingly and voluntarily waived J.L.'s rights. Accordingly, I believe it is unnecessary to determine whether the admission of J.L.'s statement was harmless beyond a reasonable doubt.