## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 25 2017, 6:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Spangler, Jr.
Lawrence County Public
Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| L.M.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | July 25, 2017<br><br>Court of Appeals Case No.<br>47A04-1612-JV-2789<br><br>Appeal from the Lawrence Circuit Court<br><br>The Honorable John M. Plummer III, Juvenile Referee<br><br>The Honorable Andrea K. McCord, Judge<br><br>Trial Court Cause No.<br>47C01-1606-JD-194 |

**Mathias, Judge.**

[1] L.M. was adjudicated a delinquent child in Lawrence Circuit Court for committing what would be Level 4 child molesting if done by an adult, and was made a ward of the Department of Correction. L.M. now appeals the admission of certain evidence at the delinquency hearing.

[2] We affirm.

## Facts and Procedural Posture

[3] In May 2016, L.M. was a sixteen-year-old boy living with his father Brandon in Huron, Indiana. Jeena Baker ("Baker") was Brandon's ex-girlfriend, and lived with her twelve-year-old daughter A.M. in Springville, Indiana. Baker and Brandon's relationship had lasted for many years, and A.M. thought of Brandon as her father. A.M. would sometimes stay at Brandon's house on the weekends.

[4] A.M. stayed at Brandon's on Memorial Day weekend of 2016. One night that weekend, L.M. and A.M. were watching a movie in L.M.'s bedroom, together with Brandon's girlfriend's three young children. As they watched the movie, L.M. told A.M. that he and Brandon's fourteen-year-old niece ("Cousin"), who was not present in L.M.'s bedroom at the time, "used to do stuff," Tr. p. 89, and that he had fondled her. Then, in A.M.'s words,

> I feel his hand on my leg and at first I pushed it off and stuff and then all of a sudden I feel him trying to stick his hands down my pants [under my underwear] and I . . . pulled his hand away, like, several times but he wouldn't stop. . . . [I]t went on awhile [until] I got up [and left L.M.'s bedroom].

Tr. pp. 91-92.

[5] A few days later, A.M. told Cousin what L.M. had done. That report soon reached Brandon and Baker, who took A.M. to be interviewed at the Lawrence County sheriff's office. A.M. repeated her story to a sheriff's detective in a videotaped interview. On June 15, 2016, the State petitioned to have L.M. adjudicated a delinquent child for committing what would be Level 4 felony child molesting if done by an adult. After a delinquency hearing on August 16, 2016, L.M. was adjudicated delinquent on August 29, 2016, and made a ward of the Department of Correction at a dispositional hearing on November 1, 2016.

[6] L.M. now appeals, challenging the admission of certain evidence at the delinquency hearing.

## Standard of Review

[7] We review challenges to a juvenile court's admission of evidence at a delinquency hearing for prejudicial abuse of the court's discretion. *J.L. v. State*, 5 N.E.3d 431, 436 (Ind. Ct. App. 2014). A court abuses its discretion by ruling in a way clearly against the logic and effect of the facts and circumstances before it, *id.*, or by misinterpreting the law. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015).

# Discussion and Decision

[8] Hearsay is an out-of-court statement offered for the truth of the matter asserted therein. Ind. Evidence Rule 801(c). An out-of-court statement offered for a different purpose is not hearsay, including as circumstantial evidence of the declarant's state of mind, *Angleton v. State*, 686 N.E.2d 803, 809 (Ind. 1997), or as evidence of the statement's effect on the hearer. *Sylvester v. State*, 698 N.E.2d 1126, 1129 (Ind. 1998). Hearsay is inadmissible unless within an exception to the rule against it. Ind. Evid. R. 802 (hearsay inadmissible), 803–04 (exceptions). Where hearsay is offered within hearsay, each part of part of the statement must be separately admissible. *Id.* 805.

[9] "Whether a statement is hearsay will most often hinge on the purpose for which it is offered." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014) (citation, quotation, and ellipsis omitted). Where an out-of-court statement is offered for its effect on the hearer in the broader context of showing why an investigation proceeded the way it did, our courts sometimes refer to such statements as "course of investigation" evidence. *See id.* While such evidence may help "bridge the gaps in the trial testimony," *id.*, it is often largely or entirely irrelevant to the "core issue at trial[:] . . . what the defendant did (or did not do), not why the investigator did (or did not do) something." *Id.* (emphasis omitted) Thus, where such evidence is offered, the trial court must take special care in balancing its relevance against the danger of unfair prejudice under Indiana Evidence Rule 403. *Id.* at 566-67.

However, L.M. rests his arguments on appeal entirely on whether the challenged evidence was hearsay. He does not challenge any statement as admissible for its effect on the hearer but as inadmissible because irrelevant and prejudicial. We therefore confine our review to the question presented to us: whether the statements were hearsay.

## I. Baker's Statement "[A.M.] Had Told [Cousin] What Had Happened"

At the delinquency hearing, the following exchange took place between the prosecutor and Baker, A.M.'s mother:

> [State:]    At some point, did you find out about an incident involving [A.M.] and [L.M.]?
>
> [Baker:]    Yes.
>
> [State:]    How did you find out?
>
> [Baker:]    Brandon called me on the phone and asked me to ask [A.M.] if anything . . . had happened because his step-mother had told him . . . that [A.M.] had told [Cousin] what had happened.

Tr. p. 68. For the purposes of our hearsay analysis, Baker's testimony took the following restated form:

- Cousin's statement "A.M. told me what had happened," within
- Step-Mother's statement "Cousin told me that A.M. told her what had happened," within

- Brandon's statement "Step-Mother told me that Cousin told her that A.M. told her what had happened," within

- Baker's testimony "Brandon told me that Step-Mother told him that Cousin told her that A.M. told her what had happened."

L.M. challenges this testimony as hearsay within hearsay not within an exception.

[12] Neither Brandon's statement to Baker nor any of the statements embedded in it was offered for its truth but for its effect on the hearer, in a manner similar to course-of-investigation evidence. The State asked Baker, "How did you find out [about an incident involving A.M. and L.M.,]" Tr. p. 68, or, put differently, "Why did you believe an incident involving A.M. and L.M. had occurred?" In response to that question, Baker answered that she believed it because Brandon told her so. The fact-finder was only invited to believe that Brandon had spoken to Baker as an explanation for Baker's subsequent conduct: namely, "call[ing] [A.M.]" and "ask[ing] her if anything had happened." Tr. p. 70. It was irrelevant in this context whether Brandon was lying when he spoke to Baker; the only relevant point was that Baker had been told something she subsequently acted on. The use of Baker's testimony and Brandon's statement for this purpose was not hearsay.

[13] Our conclusion as to the purpose of this evidence is buttressed by the fact that the words "what had happened" are not in themselves "susceptible of being true or false" and thus are not in themselves a "statement" within the meaning of

the rule against hearsay. *Craig v. State*, 630 N.E.2d 207, 211 (Ind. 1994); *see* Ind. Evid. R. 801(a) (defining "statement" as "assertion"). "[W]e acknowledge that the grammatical form of an utterance does not ultimately govern whether it is hearsay, *Phillips v. State*, 25 N.E.3d 1284, 1288-89 (Ind. Ct. App. 2015) (quotations omitted), and the fact-finder *might* have inferred the content of "what had happened" from A.M.'s later testimony. However, nothing in Baker's testimony was so "specific and detailed" as to require the inference or as to bolster A.M.'s credibility. *Williams v. State*, 544 N.E.2d 161, 163 (Ind. 1989).

## II.    Baker's Statement "[A.M.] Said It Really Happened"

As noted above, after hearing from Brandon, Baker "called [A.M.]" and "asked her if anything had happened." Tr. p. 70. Baker gave the following testimony about what happened next:

> [Baker:]      I talked to [A.M.] on the phone about it.
>
> [State:]      What did she tell you?
>
> [Defense:]   Objection, hearsay.
>
> [Court:]      Response?
>
> [State:]      I'll withdraw the question.
>
> [Court:]      Next question, please. By the way, let me [sustain] the objection formally. Next question, please.
>
> . . .
>
> [State:]      So after you talked to [A.M.] on the phone, what did you do?

[Baker:]        I hung up and called Brandon and told him that she said it really happened.

[Defense objection to vouching overruled.]

Tr. pp. 71-72. L.M. challenges Baker's testimony "[A.M.] said it really happened" as hearsay not within an exception and as vouching.

[15] As to hearsay, to the extent the trial court properly sustained L.M.'s hearsay objection to the State's question "What did she tell you," Tr. p. 71, Baker's statement was not received or considered for its truth. Not considered for its truth, the residual relevance of Baker's statement, as above, lay in showing its effect on its hearer in response to the State's question "[W]hat did you do": namely, to explain why Baker and Brandon then decided to take A.M. to be interviewed by police. Tr. p. 72 ("We discussed going to the police about it and then after that, I think it was the next day, I took [A.M.] to make a statement."). Again, it was irrelevant whether A.M. was lying when she spoke to Baker; the only relevant point was that Baker had been told something she subsequently acted on. Baker's testimony was not hearsay.

[16] Nor was it vouching.

> Vouching testimony is specifically prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This testimony is considered an [impermissible] invasion of the province of the [fact-finder] in determining what weight [it] should place upon a witness's testimony.

*Bean v. State*, 15 N.E.3d 12, 18 (Ind. Ct. App. 2014) (internal citation and some quotations omitted), *trans. denied*. Contrary to L.M.'s argument on appeal, Baker's testimony did not "ma[k]e clear her belief that A.M. was telling the truth." Appellant's Br. at 17. The operative word "really" was clearly contained in A.M.'s statement to Baker as reported by Baker; it was not Baker's evaluation of A.M.'s statement. It is as if A.M. told Baker, "I promise you it really happened." For Baker to report this statement does not even imply a particular position on Baker's part with respect to the statement's truth or falsity. There was no vouching.

### III. A.M.'s Statement "[L.M.] Was Telling Me How Him and [Cousin] Used to Do Stuff"

[17]  At the delinquency hearing, A.M. testified in part as follows:

| | |
|---|---|
| [State:] | Okay, so you and [L.M.] were talking [as you sat in his bedroom watching the movie]? Go ahead, I'm sorry. |
| [A.M.:] | And he was telling me how him and [Cousin] used to do stuff. |
| [State:] | What kind of stuff? |
| [Defense:] | Judge, I'm going to object at this point in time based on 404B. |
| [Court:] | . . . Let me hear a response from the State on 404B grounds. |
| [State:] | That it's not used—it's not used to prove what happened . . . that day. That it's used more for the |

> then existing mental, emotional, or physical condition of him at the time.
>
> . . .
>
> [Court:] Overruled. You may answer the question ["What kind of stuff did L.M. say he and Cousin used to do?"] if you remember the question. . . .
>
> [A.M.:] [H]e just said he used to finger her and stuff like that.

Tr. pp. 90-91.

[18] On appeal, the State characterizes the issue raised by this testimony as a hearsay problem, but L.M. characterizes it as a character-propensity evidence problem under Evidence Rule 404(B). We agree with the State. If the testimony were hearsay — that is, if it had been offered for the truth of the matter that L.M. used to fondle Cousin — then the testimony would be "[e]vidence of a crime, wrong, or other act" controlled by Rule 404(B). However, the testimony was not hearsay, as the State's response at trial indirectly indicated.

[19] As above, A.M.'s statement was not offered for its truth. The fact-finder was not invited to believe that L.M. and Cousin actually had done as L.M. said; it was entirely irrelevant to the State's case whether L.M. was lying when he made this statement to A.M. Rather, the State's only purpose was to show circumstantial evidence of L.M.'s state of mind — that it was oriented to "arous[ing] or . . . satisfy[ing] the sexual desires of . . . [L.M.]," Ind. Code § 35-42-4-3(b), an intent the State was required to prove as charged. Appellant's

App. p. 8 (delinquency petition). Though the State framed its response at trial in terms of the exception to the rule against hearsay for statements of the declarant's "then-existing state of mind," Evid. R. 803(a), it is clear in context that the State was seeking to offer L.M.'s statement for the non-hearsay purpose of circumstantial evidence of state of mind.

## Conclusion

All of the challenged evidence was admissible. None of the challenged evidence was hearsay. Baker never vouched for A.M., and A.M.'s testimony was not governed by Rule 404(B). There was no abuse of discretion, and the judgment of the juvenile court is therefore affirmed.

Affirmed.

Kirsch, J., and Altice, J., concur.