## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2019, 10:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.D.,
*Appellant-Respondent*,

v.

State of Indiana,
*Appellee-Petitioner*.

March 12, 2019

Court of Appeals Case No.
18A-JV-2391

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge

The Honorable Amanda Yonally, Magistrate

Trial Court Cause Nos.
18C02-1804-JD-45
18C02-1807-JD-73

**Brown, Judge.**

[1] L.D. appeals his adjudication as a delinquent for committing acts that constitute dangerous possession of a firearm and the juvenile court's dispositional order awarding wardship of him to the Department of Correction (the "DOC") for housing in any correctional facility for children. L.D. raises two issues which we revise and restate as:

    I.    Whether the evidence is sufficient to sustain his adjudication as a delinquent; and

    II.    Whether the juvenile court abused its discretion when it awarded wardship to the DOC.

We affirm.

### Facts and Procedural History

[2] On April 18, 2018, the State filed a delinquency petition under cause number 18C02-1804-JD-45 ("Cause No. 45"), alleging L.D. to be a delinquent child for committing: Count 1, battery, a class B misdemeanor if committed by an adult; and Count 2, resisting law enforcement, a level 6 felony if committed by an adult. When L.D. appeared for an initial hearing in Cause No. 45, he admitted to Count 2, the State dismissed Count 1, and the court adjudicated him a delinquent for resisting law enforcement, a level 6 felony if committed by an adult, and set a dispositional hearing for June 26, 2018. On June 27, 2018, the court issued an order for warrant, which indicates that L.D. failed to appear for the June 26, 2018 hearing.

[3] On July 1, 2018, "just a little bit before 6:26 a.m. that morning," at the intersection of Eighth Street and Port Avenue in Muncie, Indiana, Officer

Melissa Pease was in a marked, black-and-white police vehicle and observed a "purpleish-blue colored Hyundai Sonata" coming from the north on Port Avenue that did not stop at the four-way intersection. Transcript Volume II at 6-7. Officer Pease, who "immediately . . . could tell that [the vehicle] was picking up speed, accelerating," entered the intersection, turned on the police vehicle's lights and sirens, and observed the vehicle turn east on Ninth Street, run through the stop sign at the intersection of Ninth Street and Perkins, and turn north on Sampson. *Id.* at 7. As she was "coming around on to Sampson," she saw the vehicle "kind of rolling toward the west side of Sampson" where there was a parking lot and "where there used to be a business and some cement that's kind of up higher," and saw four occupants exit the vehicle and "take off running as the vehicle was still in gear and hit the cement." *Id.* at 8. Deciding to follow the individuals running west down the alley in her police vehicle, she focused on "the larger individual, [who was L.D.], wearing a white tee shirt and black basketball shirts."[1] *Id.* At about two car lengths behind L.D., Officer Pease watched him grab in his waistband and throw items down in the alley.

---

[1] At the August 14, 2018 fact-finding hearing in cause number 18C02-1807-JD-73, the prosecutor stated, "[y]ou uh, identified the juvenile in this case," and asked whether that was the same person she saw running down the alleyway, and Officer Pease answered affirmatively. Transcript Volume II at 8. When asked what was distinguishable about L.D. that morning, Officer Pease stated that L.D. was "a larger individual of the ones running, taller, his hair – um, longer hair on top, um, and I observed the – the white tee shirt and black shorts," and testified later that "I have them in sight and as I'm watching – like I said I was – I think because he was the larger individual I was more focused on him." *Id.* at 8-9.

[4]     After losing sight of the individuals, Officer Pease returned to the running vehicle that the individuals had fled and gave the vehicle's plate number and VIN number to dispatch. At some point, she then "continued back – or came back to the area and set up the alley on the west end at Ninth and Perkins" facing east, and saw L.D., who wore the same clothing, "pop out" from the houses on the north side of the alley. *Id.* at 12. She attempted to marshall units into the area because she "felt like he was going to take off again," L.D. looked in her direction, she started driving to the east, and he took off running south in between a house just to the west of Sampson. *Id.* He was ultimately found hiding in "like a cellar" on the west side of the house at 1521 South Sampson. *Id.* at 13. When Officers Dustin Lee and Tyronna Benning returned to the location where Officer Pease had witnessed L.D. grab in his waistband, they "secured the items that were thrown down" and Officer Pease "met them and uh, located a money bag with change in it and a black, semi-automatic handgun." *Id.* at 9.

[5]     On July 6, 2018, the State filed a delinquency petition under cause number 18C02-1807-JD-73 ("Cause No. 73"), alleging L.D. to be a delinquent child for committing acts that would be a crime if committed by an adult, to-wit: "Count I, Criminal Trespass, I.C. 35-43-2-2(b)(3), a Class A Misdemeanor . . . . Count II, Resisting Law Enforcement, I.C. 35-44.1-3-1(a)(3), a Class A Misdemeanor . . . Count III, Dangerous Possession of a Firearm, I.C. 35-47-10-5(a), a Class A Misdemeanor." Appellant's Appendix Volume II at 150.

[6] On August 14, 2018, the court held a fact-finding hearing under Cause No. 73, at which Officer Pease and L.D. testified. After mentioning the money bag and handgun, Officer Pease testified that the handgun was a "three eighty caliber revol – or I'm sorry, Ruger" which had "four in the magazine but it was not chambered." Transcript Volume II at 9. She answered affirmatively when asked if "those items were the items that she saw L.D. throw from his waistband." *Id.* She was later shown a photograph that she had taken of the "money bag and the gun that [were] located on the south side of the alley where [she] saw the items dropped," and she answered affirmatively when asked if the photograph truly and accurately depicted what she saw the juvenile drop and if the gun was in the lower center of the picture. *Id.* at 14. The State moved to admit the photograph as State's Exhibit 4, which the court admitted without objection. L.D. testified that "[w]e all ran" and answered, "[b]ecause I had a warrant," when asked why he ran. *Id.* at 21-22. He answered in the negative when asked if he had a gun in his possession at the time he ran down the alley; if he knew from where the gun came; and, if he reached into his waistband and threw anything. When his counsel asked if he had a money bag, L.D. responded, "Nah. No, I know the money bag," it "came from Mike,"[2] and "[i]t

---

[2] L.D. previously answered that "the Mike dude, he – me and him tryin' (sic) to put some change together and he was about to take me back to my crib" when asked why he had been in the vehicle during the morning of July 1, and stated "[y]eah" when asked whether the individual that "you guys call Money Mike" was also in the vehicle. Transcript Volume II at 19-20. L.D. also testified that Money Mike was driving the vehicle. *Id.* at 21.

had to because me and (indiscernible) (indiscernible) change together for them to take us home." *Id.* at 22.

[7] On August 19, 2018, the court issued its order on the fact-finding hearing in Cause No. 73, which found that the evidence did not prove beyond a reasonable doubt that L.D. committed the act of criminal trespass and that the evidence presented at the hearing was sufficient for the court to conclude beyond a reasonable doubt that L.D. did resist law enforcement and knowingly, intentionally or recklessly possessed a firearm for a purpose other than a purpose described in Ind. Code § 35-47-10-1. The order also adjudicated L.D. delinquent as to Counts II and III and ordered the juvenile probation department to prepare a pre-dispositional report.

[8] On September 19, 2018, the court held a dispositional hearing in Cause Nos. 45 and 73, at which it noted having pre-dispositional reports filed by juvenile probation in both causes. Probation Officer Hollie Partin asked that L.D. be given, under Cause No. 45, a "sixty day commitment to the Delaware County Juvenile Detention Center and . . . credit for time served and that that matter be closed out" and that, under Cause No. 73, L.D. in part be placed on formal probation for up to one year, receive a suspended commitment to the DOC, and be released from the Delaware County Juvenile Detention Center to the custody of the Youth Opportunity Center and "placed in cottage seven, INTAC progam." *Id.* at 31. She indicated that in January 2016, L.D. was arrested and adjudicated of burglary, in December of 2016 at his disposition for the offense he received a DOC suspended commitment and formal probation under cause

number 18C02-1601-JD-14, and testified that "it appears that [L.D.] was still on" formal probation for the offense "for probation fees um, because it was not an official release and he was re-arrested then in March, which was a year and four months after that." *Id.* at 33. She further testified that L.D. had never successfully completed probation before a re-arrest. After questioning L.D, the court found him to be "beyond the rehabilitative efforts of Delaware County." *Id.* at 39.

[9] On September 19, 2018, the court issued dispositional orders in Cause Nos. 45 and 73, which found it was in L.D.'s best interest to be removed from his home environment and that remaining in the home would be contrary to his welfare because he presented as a danger to himself and others. It also issued its Order on DOC Commitment under Cause No. 73, which noted L.D.'s delinquent adjudication for resisting law enforcement in Cause No. 45 and awarded wardship of L.D. to the DOC for housing in any correctional facility for children.

## *Discussion*

### I.

[10] The first issue is whether the evidence is sufficient to sustain L.D.'s adjudication as a delinquent for committing dangerous possession of a firearm.[3] When the State seeks to have a juvenile adjudicated a delinquent, it must prove

---

[3] L.D. does not challenge his adjudications as a delinquent for having committed acts that would constitute resisting law enforcement if committed by an adult under Cause Nos. 73 and 45.

every element of the offense beyond a reasonable doubt. *D.B. v. State*, 842 N.E.2d 399, 401 (Ind. Ct. App. 2006) (citing *C.T.S. v. State*, 781 N.E.2d 1193, 1200-1201 (Ind. Ct. App. 2003), *trans. denied*). In reviewing a juvenile adjudication, this Court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *J.L. v. State*, 5 N.E.3d 431, 442 (Ind. Ct. App. 2014). If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[11] L.D. argues that the State did not present evidence that he was in possession of the firearm, contends that he did not have exclusive possession of the premises in which the firearm was found, and asserts that the located firearm could have been dropped, thrown, or abandoned by other persons as he "was not the only person who passed through the alley." Appellant's Brief at 13. The State underscores L.D.'s claims at the fact-finding hearing that "he recognized the money bag as his friend Mike's, but he did not recognize the gun and had not discarded either of them"; points to Officer Pease's testimony, recognition of distinct characteristics about the specific individual who discarded the items, and observation that multiple items were discarded at the same time at the location where the money bag and gun were found; and contends that the evidence, including the recovery of only two items in that location, viewed in the light most favorable to the adjudication support the finding that L.D. had possessed the gun before discarding it in the alley. Appellee's Brief at 8.

[12] Ind. Code § 35-47-10-5(a) provides in part that a "child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in section 1 of this chapter commits dangerous possession of a firearm, a Class A misdemeanor."[4] The record reveals that the State presented the testimony of Officer Pease, who witnessed four occupants exit a vehicle which she had pursued and followed the individuals running west down the alley. She testified that she focused on the larger individual and identified him as L.D. She further testified that she watched L.D. grab in his waistband and throw items into the alley; indicated that Officers Lee and Benning returned to the location and "secured the items that were thrown down" and that she returned and located a money bag and a black, semi-automatic handgun; and answered affirmatively when asked if "those items" were the items she saw L.D. throw from his waistband. Transcript Volume II at 9. To the extent that L.D. requests that we judge the credibility of the witnesses and reweigh evidence, we will not do so. *See J.R.T. v. State*, 783 N.E.2d 300, 302 (Ind. Ct. App. 2003), *trans. denied*. Based upon our review of the evidence and in light of the reasonable inferences which support the judgment, we conclude the State presented evidence of probative value from which a reasonable factfinder could find beyond a reasonable doubt that L.D. was delinquent on this basis.

---

[4] On appeal, L.D. challenges the adjudication only on the element of possession and does not suggest that any other elements of Ind. Code § 35-47-10-5(a) were not satisfied.

[13]   The second issue is whether the juvenile court abused its discretion in awarding wardship of L.D. to the DOC for housing in any correctional facility for children. The juvenile court is given "wide latitude and great flexibility" in determining the specific disposition for a child adjudicated a delinquent. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
>   (1) is:
>
>       (A) in the least restrictive (most family like) and most appropriate setting available; and
>
>       (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
>   (2) least interferes with family autonomy;
>
>   (3) is least disruptive of family life;
>
>   (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
>   (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[14]   "Under the statute, placement in 'the least restrictive (most family like) and most appropriate setting available' applies only '[i]f consistent with the safety of the community and the best interest of the child.'" *J.D. v. State*, 859 N.E.2d

341, 346 (Ind. 2007) (quoting Ind. Code § 31-37-18-6). A disposition will not be reversed absent a showing of an abuse of the juvenile court's discretion, which occurs when the juvenile court's order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences that can be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[15] L.D. argues that the completion of a residential program, like that which was recommended by probation, would have been in his best interests, contends that the court has never attempted any type of rehabilitative treatment or offered counseling to him, and asserts that, prior to the incident "under [Cause No. 45], [he] has not been in trouble since January 2016." Appellant's Brief at 15. The State argues in response that L.D. has a history of delinquent conduct going back to the age of twelve that consists of true findings for carrying a handgun without a license and burglary, that there is no requirement for a juvenile court to offer rehabilitative treatment prior to commitment to the DOC, and that the court could reasonably conclude that it was both in the best interest of L.D. and the safety of the community to commit him to the custody of the DOC.

[16] The September 17, 2018 pre-dispositional report indicates that L.D. first became involved with the Delaware County Probation Department in June 2014 for theft, at which time he was warned and released, and that, in April 2015, he was placed on informal adjustment for being incorrigible. Appellant's Appendix Volume II at 182. The report further indicates that his legal history includes carrying a handgun without a license in 2015 while he "was on

Informal Adjustment for Incorrigibility from March 2015," for which he was placed on formal probation, and burglary of a dwelling in 2016. *Id.* The report also states that "Informal Adjustment; OP counseling; Day Reporting; Informal house arrest; Formal probation" services were provided. *Id.* at 187.

[17] L.D. admitted in Cause No. 45 that he resisted law enforcement. He failed to appear for the June 26, 2018 dispositional hearing in Cause No. 45, and a warrant was issued for his arrest. On July 1, 2018, Officer Pease encountered L.D., who ran because he had an outstanding warrant. The court adjudicated L.D. delinquent for resisting law enforcement and dangerous possession of a firearm in Cause No. 73. Under these circumstances we conclude that the placement ordered by the juvenile court is consistent with his best interest and the safety of the community and find no abuse of discretion.

[18] For the foregoing reasons, we affirm the juvenile court's adjudication of L.D. as a delinquent and its order awarding wardship to the DOC.

[19] Affirmed.

Bailey, J., and Bradford, J., concur.