## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 16 2015, 8:44 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Clayton Jackson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 16, 2015

Court of Appeals Case No.
82A01-1410-CR-445

Appeal from the Vanderburgh
Superior Court

The Honorable Wayne S. Trockman,
Judge

Cause No. 82D02-1312-FB-1598

**Friedlander, Judge.**

[1] William Clayton Jackson appeals his conviction for class B felony Possession of Methamphetamine,[1] class C felony Dealing in a Look-A-Like Substance,[2] and class A misdemeanor Possession of Marijuana.[3] He presents the following restated issue for review: Did the trial court abuse its discretion by admitting evidence of Jackson's urinalysis?

[2] We affirm.

[3] On the afternoon of December 11, 2013, members of the Vanderburgh County Evansville Drug Task Force set up surveillance of Jackson's residence prior to executing an arrest warrant upon him. Detectives Patrick McDonald and James Budde observed Jackson and several other individuals at the residence. After about an hour of surveillance, McDonald and Budde, assisted by several officers of the Evansville Police Department, knocked on the front door.

---

[1] The version of the governing statute, Ind. Code Ann. § 35-48-4-6.1(b)(2)(B)(i) (West, Westlaw 2013), in effect at the time this offense was committed classified it as a class B felony. The statute has since been revised and in its current form classifies the offense as a Level 6 felony. *See* I.C. § 35-48-4-6.1(a) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through June 28, 2015, excluding sections of P.L. 213-2015 with effective dates after February 1, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before then, it retains the former classification.

[2] Ind. Code Ann. § 35-48-4-4.6(a)(5) (West, Westlaw 2013). The revised statute now classifies this offense as a Level 5 felony. *See* I.C. § 35-48-4-4.6(a)(5) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through June 28, 2015, excluding sections of P.L. 213-2015 with effective dates after February 1, 2015).

[3] Ind. Code Ann. § 35-48-4-11 (West, Westlaw 2013). The revised statute now classifies this offense as a class A or B misdemeanor, depending on whether the defendant has a prior conviction for a drug offense. *See* I.C. § 35-48-4-11(a) and (b) (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through June 28, 2015, excluding sections of P.L. 213-2015 with effective dates after February 1, 2015).

Jackson answered the door after a few minutes. There were five other individuals in the home, including Jackson's roommate, Jeffrey Betz.

[4] Officers performed a protective sweep of the residence and assembled and identified the people inside. In plain view, Detective McDonald observed glass pipes with burnt residue, loose prescription pills, and a device commonly used to smoke marijuana. As a result of these observations, Detective McDonald decided to lock the residence down and apply for a search warrant. Jackson was arrested.

[5] While en route to the Vanderburgh County Jail, Jackson informed Officer Ryan Winters that he had swallowed several baggies of methamphetamine and five pills. Winters, accordingly, changed course and took Jackson to the hospital for medical clearance. Jackson advised his treating physician, Dr. Phillip Adams, that he had ingested Xanax pills and "a quarter of meth" and later generally indicated that he had ingested "two bags of drugs". *Transcript* at 135. Dr. Adams ordered a urinalysis drug screen, which came back with presumptively positive results for THC and methamphetamine.

[6] In the meantime, police executed a search warrant on Jackson's home. The bulk of the evidence collected was recovered from Jackson's bedroom. This included, among other things, two digital scales, a bag of marijuana with an approximate weight of 12 grams, a bag of methamphetamine with a weight of 1.38 grams, drug paraphernalia, a box of plastic baggies, a propane torch, and a large container of MSM (a common cutting agent for methamphetamine).

Additionally, five bags of a white, crystal-like substance and two bags of a pink, crystal-like substance were found in the bedroom. The total weight of these non-controlled substances, which were "look-a-like[s] for crystal meth", was approximately 50 grams. *Id.* at 25.

[7] Following a jury trial, Jackson was convicted as set forth above. He also entered into a plea agreement regarding the habitual substance offender allegation in this case and an unrelated charge, which was dismissed in exchange for his admission to being a habitual substance offender. The trial court sentenced Jackson to an aggregate term of eighteen years in prison.

[8] On appeal, Jackson challenges the admission into evidence of the results of his urinalysis.[4] He claims the "non-confirmatory test results" were inadmissible under Indiana Evidence Rule 403.[5] *Appellant's Brief* at 6.

[9] A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Blount v. State*, 22 N.E.3d 559 (Ind. 2014). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances before the court or the trial court misinterpreted the law. *Id.*

---

[4] We note that Jackson actually presents the issue on appeal as a challenge to the denial of his motion to suppress. Because he appeals from a completed trial, however, the issue is "more appropriately framed" as whether the evidence was admissible at trial. *Brown v. State*, 929 N.E.2d 204, 206 n.1 (Ind. 2010) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

[5] Jackson also asserts that admission of the evidence violated Indiana Evidence Rule 404(b) because the positive results could have been from drugs ingested prior to the date of the test, which would constitute evidence of a prior bad act. Jackson, however, did not specifically raise this ground in his objection during trial. Accordingly, the argument is waived. *See Griffin v. State*, 16 N.E.3d 997, 1005 (Ind. Ct. App. 2014) (finding waiver where "grounds raised in support of his objection at trial are substantially different than those he raises on appeal"). *See also Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000) ("a defendant may not argue one ground for objection at trial and then raise new grounds on appeal").

Further, "[e]rrors in the admission of evidence are to be disregarded as harmless unless they affect the substantial rights of the defendant." *Goudy v. State,* 689 N.E.2d 686, 694 (Ind. 1997). In other words, if the probable impact of the evidence on the jury, in light of all the evidence presented, is sufficiently minor so as not to affect the substantial rights of the parties, we will find the error harmless. *See Daniels v. State*, 683 N.E.2d 557 (Ind. 1997). Additionally, "an error in the admission of evidence is harmless if the erroneously admitted evidence is cumulative of other evidence appropriately admitted." *Collins v. State,* 826 N.E.2d 671, 679 (Ind. Ct. App 2005), *trans. denied.*

[10] Evid. R. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, a danger of unfair prejudice. "Evaluation of whether the probative value of an evidentiary matter is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court." *Bryant v. State*, 984 N.E.2d 240, 249 (Ind. Ct. App. 2013), *trans. denied.*

[11] Though relatively lengthy, Jackson's argument is disjointed and not well formed. He attacks the probative value of the urinalysis results, noting that they were presumptive[6] and could not establish when in the preceding forty-eight

---

[6] At trial, Dr. Adams explained why he did not order a confirmatory test following the urinalysis results:

> So in this case, since the defendant had already admitted to ingesting the methamphetamine and his vital signs were stable, he was in relatively good condition, you know, testing to confirm a specific level wasn't absolutely necessary, especially considering the fact that he admitted to ingesting the bags of methamphetamine. We weren't entirely sure that it would show up on the drug screen to begin with because, like I said previously, that if they were in the bags themselves that prevents the body from absorbing them unless the bag is ruptured. So to find out a level on somebody that's stable it doesn't really change our treatment or our management.

hours Jackson had ingested the substances. He argues, therefore, that the jury was likely to believe he ingested methamphetamine on the date of his arrest when it could have been up to two days before or not at all (due to a false positive). Jackson also baldly asserts that whether he was "intoxicated at the time" was not an element of any of the charged offenses. *Appellant's Brief* at 12.

[12] We agree with the State that even assuming the evidence was improperly admitted, the error would be harmless. Police recovered a mountain of drug-related contraband from Jackson's bedroom, including actual methamphetamine and marijuana. Evidence that Jackson tested positive for having these substances in his system was of marginal import as compared to this other evidence. *See Daniels v. State*, 683 N.E.2d at 559 (evidence admitted in violation of Evid. R. 403 was held to be "harmless in light of the other evidence clearly establishing the defendant's guilt"). Moreover, the positive test results were largely cumulative of other evidence admitted at trial (i.e., Jackson's statements to both Officer Winters and Dr. Adams that he had ingested methamphetamine). Jackson's substantial rights were not affected by admission of the challenged evidence.

[13] Judgment affirmed.

Baker, J., and Najam, J., concur.

---

*Transcript* at 141-42.