## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Dec 30 2016, 6:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth A. Johnson
Suzy D. St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Reid,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 30, 2016

Court of Appeals Case No.
49A02-1603-CR-429

Appeal from Marion Superior Court.
The Honorable Stanley Kroh,
Magistrate.
Cause No. 49G15-1503-F6-8251

**Garrard, Senior Judge**

[1]     Following a jury trial, Michael Reid was convicted of one count of intimidation[1] as a Class A misdemeanor, and one count of harassment[2] as a Class B misdemeanor. Judgment of conviction and sentencing was entered on only the conviction for misdemeanor intimidation. Reid appeals, contending that there is insufficient evidence to support his intimidation conviction, that the trial court abused its discretion by instructing the jury on harassment as a lesser-included offense, and that the trial court abused its discretion in the manner in which it ordered Reid to pay costs and fees. We affirm in part, and reverse and remand in part with instructions.

[2]     Reid, a veteran, worked as the secretary for Michael Rilenge at the Veterans Affairs Medical Center in Indianapolis from 2007 to 2010. Rilenge described Reid as a good employee to whom other workers turned in order to accomplish goals and whose behavior was very pleasant, initially. However, Rilenge observed that Reid's demeanor changed a couple of months prior to Reid's voluntary resignation from that position in the spring of 2010, after a routine audit of employee transactions revealed that Reid had inappropriately used his government travel credit card for purchases at Walmart and Walgreens. As Reid's supervisor, Rilenge was required to sign off on Reid's suspension for this conduct, even though Rilenge had not discovered or reported the conduct.

---

[1] Ind. Code § 35-45-2-1 (2014).

[2] Ind. Code § 35-45-2-2 (1996).

Rilenge was fully aware that Reid was seeking government employment elsewhere. Reid ultimately resigned from his position as Rilenge's secretary at the Veterans Affairs Medical Center in May 2010. At some point that spring, Rilenge received a telephone call from someone at the U.S.D.A. asking for a reference for Reid's performance during the application process. Rilenge described his recommendation of Reid as a "good reference." Tr. p. 47.

The first communication initiated by Reid to Rilenge after Reid left his job at the Veterans Affairs Medical Center was on June 2, 2010, when Reid telephoned Rilenge's work telephone number. Rilenge described Reid's demeanor as very angry and upset, with Reid contending that Rilenge was messing with his paycheck and stating that Reid was "coming for" Rilenge. *Id.* at 48. After Rilenge replied that he had nothing to do with Reid's final paycheck, Reid hung up the telephone. Rilenge reported the substance of the telephone call in writing to the director, who then reported the incident to Veterans Affairs Medical Center Police. The Director of the Veterans Affairs Medical Center at that time was Thomas Mattice.

Nothing further transpired until Rilenge received an email at his government-issued email address from Michael.EReid@IRS.gov on August 16, 2013, over three years later. The subject line of that email read, "I hope you know that it's not over." *Id.* at 53. The text of the email read, "I am still coming for you. . . . spineless coward. It will never be over. . . . . Vengeance is mine Punk. Don't

think I've Faded away." *Id.*[3] The signature block read, "Thank You and Have A Great Day! 'A person's Character is measured by how they react to Pressured Situations.' Mike Reid." *Id.*; State's Ex. 1. Rilenge did not respond to the email, but forwarded it to the director, and it was subsequently reviewed by Veterans Affairs Medical Center Police.

[6] The next contact initiated by Reid[4] was an email to Rilenge's work-issued email address from the same IRS email address on October 23, 2014, over a year after the last email. Tr. pp. 56-58; State's Ex. 2. The email, which was initially sent to United States Senator Dan Coats and various others at the Department of Veterans Affairs, read in pertinent part as follows about an EEOC claim Reid had filed:

> [T]he lack of candor, morals, and principles among leadership caused me to look for employment elsewhere.
>
> The retaliatory adverse actions initiated by Michael Rilenge[ . . .], have ruined my life[.]
>
> I initially had an interagency transfer to USDA, I had a start date of May 24, 2010. [ ]My Veterans Administration First Line supervisor sabotaged that position by calling the Manager I would've began working for at USDA. The position was rescinded the day I cleared Veterans Administration May 19th 2010. This made my interagency transfer become Null & Void.

---

[3] This document was admitted with a limiting instruction to the jury that its admissibility was for the purpose of potentially establishing motive, identity, or opportunity.

[4] Reid admitted in a different proceeding in which Rilenge sought a protective order that he was the author of the emails to Rilenge. The trial court limited any reference to the nature of the prior proceeding unless Reid placed authorship of the emails at issue.

This forced me to change the inter-agency transfer to a constructional Discharge. In remarks in the SF-50, I specifically stated I feared reprisal from supervisor & the Indianapolis Medical Center Director.

The Indianapolis Veterans Health Administration's Human Resource Officer, Corey Baute removed my remarks and entered employee offered no explanation for resignation.

Tr. pp. 56-58; State's Ex. 2.

[7]     The incidents of March 3, 2015, formed the basis for the charges filed against Reid. On that date, Reid sent an email from his personal account[5] to Rilenge's work-related email address, bearing the subject line, "YOU are still spineless." State's Ex. 3. The body of the email read as follows:

I am still coming for YOU. It doesn't matter how many times you contact my agencies [sic] inspector [sic] General. It doesn't matter, it'll be well worth losing this job to get to you.

AND Thomas Mattice

It's far from over

Contact the police again while you're at it.

Neither one of you hold ANY credibility

*Id.*

[8]     Later that same day, Reid left a voicemail message[6] for Rilenge at Rilenge's work number claiming that he was still coming to get Rilenge, but this time

---

[5] This email was sent from dakurrupt69@gmail.com, but listed Michael Reid as the sender.

[6] Attempts to save or forward the message in order to preserve it as evidence were unsuccessful due to system upgrades.

communicating that he knew where Rilenge lived. Rilenge was concerned for the safety of his employees, himself, and his family.

[9] Also that day, the Chief of the Veterans Administration Police Department, Brian Fogg, was advised of the progress in the investigation in the case by a criminal investigator for police services at the Indianapolis Veterans Affairs Medical Center, Officer Roman Hollwka. After the update, Chief Fogg, a veteran with twenty-two years of active duty experience in the United States Navy, decided to call Reid to discuss the controversy veteran-to-veteran. When Chief Fogg identified himself as a police officer, Reid became angry and hung up. Reid sent a follow-up email to Rilenge, which read as follows:

> So THE vamc police calls me a few minutes ago, stating they will contact my agencies [sic] inspector [sic] General and your agencies [sic] inspector [sic] General if I send rilenge another email.
>
> So what, do what you have to DO. My agency inspector general has already interviewed me twice already. Let's make it three times, I've heard it's a charm
>
> Michael Rilenge, Thomas Mattice You both are a joke. YOU are scared to answer your phone, and will most likely ignore the voicemail I left for you Rilenge
>
> When I called the police service back, they say that no one from the police service called me. I am too old for these games.

State's Exhibits 4, 5.

[10] Later that same afternoon, Reid sent another email to Rilenge, which read "F**k the chief of police at Indianapolis medical center too[.] Yeah Mr. Foggs,[sic] you too[.] Get back on your segway mall cop[.]" State's Exhibit 6.

[11] Rilenge testified at trial that he was unsure why Reid was so angry with him but that he considered each post-employment communication to be a personal threat.

[12] On March 12, 2016, the State charged Reid with two counts of intimidation; one for the email communication, and one for the telephone call. The charges were amended to misdemeanor counts prior to trial, and Reid declined the State's offer of a diversion agreement. After the State's case, Reid moved for a directed verdict, alleging the State had failed to prove a prior lawful act. The trial court denied the motion, noting, "I think it is somewhat of a close call but the Court believes there is enough evidence in the record to survive a directed verdict motion. That the Jury should be the fact finder here because there is some evidence in the record." Tr. p. 109. The State tendered proposed jury instructions including Class B misdemeanor harassment as lesser-included charges to each of the counts of intimidation. The trial court gave the instructions. The jury returned verdicts of guilty as to one count of Class A misdemeanor intimidation for the email and one count of Class B misdemeanor harassment for the telephone call. The trial court entered a judgment of conviction on only the conviction for intimidation for the email.

[13] Reid received a sentence of 343 days on probation. The trial court also imposed court costs on Reid, and ordered the probation department to assess Reid for mental health or anger management services and to determine program fees in accordance with Reid's ability to pay. The probation department set Reid's court costs at $183 and assessed a $100 public defender fee. Reid was also

ordered to pay $320 in probation fees, comprised of a $50 administrative fee, a $50 initial user fee, and a $20 per month user fee. Reid now appeals.

[14] First, Reid challenges the sufficiency of the evidence to support his conviction for intimidation. Challenges to sufficiency of the evidence involve appellate consideration of only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable factfinder could find the defendant guilty of the offense. *Id.*

[15] Reid also implicitly argues that there is a fatal variance between the charging information and the evidence adduced at trial, contending that the State failed to establish a prior lawful act matching the allegations in the charging information. As stated by our Supreme Court, "because the charging information advises a defendant of the accusations against him, the allegations in the pleading and the evidence used at trial must be consistent with one another." *Blount v. State*, 22 N.E.3d 559, 569 (Ind. 2014). While a variance is an essential difference between the two, not all variances are fatal. *Id.* For a defendant to be awarded relief for a variance, the variance must have (1) misled the defendant in preparing a defense, resulting in prejudice, or (2) left the defendant vulnerable to future prosecution under the same evidence. *Id.*

[16] Before we resolve the issue whether there was a fatal variance between the proof at trial and the charging information, we must first determine whether

there is sufficient evidence to support Reid's conviction of intimidation as a Class A misdemeanor. *See Daniels v. State*, 957 N.E.2d 1025 (Ind. Ct. App. 2011) (first determined sufficient evidence that defendant used weapon and then determined no fatal variance that information instead charged defendant drew weapon).

[17] The statute describes intimidation as follows: "A person who communicates a threat to another person, with the intent that the other person be placed in fear of retaliation for a prior lawful act." Ind. Code § 35-45-2-1(a)(2) (2014). The charging information read as follows:

> On or about March 3, 2015, Michael Reid did communicate a, [sic] implied threat to commit a forcible felony, to-wit: a threat contained in an email to Michael Rilenge stating that he was "coming for" Michael Rilenge and that it would be worth losing his job to "get to you", meaning Michael Rilenge, with the intent that Michael Rilenge be placed in fear of retaliation for a prior lawful act, to-wit: Michael Rilenge providing a report of Michael Reid's work performance as his supervisor prior to Michael Reid's removal from employment at the Veteran's Administration Medical Center[.].

Appellant's App. p. 20.

[18] Reid contends that the State failed to introduce evidence that Rilenge "provided a report" of Reid's "work performance," or that the report was provided before Reid's "removal from employment." Reid, however, was aware during pre-trial preparation, arguments of counsel, and rulings of the trial court, that his prior emails would be admissible at trial. Those emails revealed that Reid was upset because Mattice discovered his improper use of work-related credit cards, and

Rilenge signed off on the discipline for that impropriety and responded to a request for a reference from a manager at the U.S.D.A., both lawful acts occurring prior to Reid's resignation from his position. Preparation and maintenance of Reid's defense was not misled by the imprecise wording of the charging information, nor did it lead to harm or prejudice, or vulnerability to future prosecution for the same charges.

[19] Here the jury determined that the State had not proven intimidation with respect to Count II and entered a guilty verdict on the offense of harassment. However, the trial court vacated the conviction on Count II. Therefore, any abuse of discretion with respect to giving the instruction as to Count II is harmless error.

[20] Reid also argues the trial court erred by failing to determine his ability to pay prior to imposing costs and fees as part of his sentence. Initially, the trial court also imposed a $50 fine, but then vacated it. Although the trial court heard evidence with respect to Reid's qualification for appointed appellate counsel, no evidence was heard regarding Reid's ability to pay costs and fees.

[21] The trial court stated that "under the circumstances the Court would direct Probation to assess the program fees on a sliding scale." Tr. p. 156. The trial court's written sentencing order reflected no court costs and fees. Sentencing Order pp. 1-2. A case transactions summary prepared for Reid's sentencing showed that he was being assessed $603.00 in fees. Appellant's Appendix, Vol. II., pp. 104-05.

[22] "Sentencing decisions, which include the imposition of fees, costs, and fines, are generally left to the trial court's discretion." *Henderson v. State*, 44 N.E.3d 811, 814 (Ind. Ct. App. 2015). The Supreme Court has held that "a defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise." *Whedon v. State*, 765 N.E.2d 1276, 1279 (Ind. 2002).

[23] Reid's conviction was for a misdemeanor offense and he was placed on probation. With respect to fees, Indiana Code section 35-38-2-1(e) (2012) provides that a court may order each person convicted of a misdemeanor to pay: (1) not more than a $50 initial probation user's fee; (2) a monthly probation user's fee of not less than $10 nor more than $20 for each month that the person remains on probation; (3) costs of laboratory tests; and (4) an administrative fee of $40 to the probation department or the clerk.

[24] Here, the probation department, as directed by the trial court, determined that Reid should pay various fees and costs. The only fee that does not appear to comport with the fee parameters set forth by statute is the supplemental public defender fee. Appellant's Appendix p. 104. The State agrees that the public defender fee for a felony conviction is $100 and the public defender fee for a misdemeanor conviction is $50. *Id.* at 101. The probation department's calculation is $100. *Id.* at 104. Although the offenses were originally charged as felonies, the charges were amended and the conviction was for a misdemeanor. Therefore, we must remand this matter to the trial court to

correct the calculation and assess the fee at the misdemeanor conviction rate. Furthermore, pursuant to Indiana Code section 35-33-7-6 (2004), an indigency finding must be done when a person requests assigned counsel, prior to the imposition of the fee, and the indigency finding may be reviewed at any time during the proceedings. *See Berry v. State*, 950 N.E.2d 798, 799-800, 802 (Ind. Ct. App. 2011).

[25] With respect to probation fees, we have held that a trial court acts "within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Johnson v. State*, 27 N.E.3d 793, 795 (Ind. Ct. App. 2015) (citing Ind. Code ch. 35-38-2). However, the trial court has a duty to conduct an indigency hearing, at the latest upon the completion of the defendant's sentence. *Id.* When the trial court imposes costs on a defendant, Indiana Code section 33-37-2-3 (2007), explicitly sets forth the timing of the hearings to determine indigency.

[26] In summary, we affirm Reid's conviction, but reverse and remand to the trial court the public defender fee calculation for correction and determination of Reid's ability to pay. As for the probation fees and other costs imposed, the trial court must determine Reid's ability to pay, at the latest, at the completion of his sentence.

[27] Affirmed in part, reversed and remanded in part with instructions.

Bailey, J., and Altice, J., concur.