## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2018, 10:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew B. Arnett
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Wayne Ashley, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 10, 2018 <br><br> Court of Appeals Case No. <br> 73A01-1710-CR-2354 <br><br> Appeal from the Shelby Circuit Court <br><br> The Honorable Charles D. O'Connor, Judge <br><br> Trial Court Cause No. <br> 73C01-1703-F2-1 |

**Bailey, Judge.**

# Case Summary

Following a jury trial, Joshua Wayne Ashley ("Ashley") was convicted of several offenses in connection with breaking into a pole barn.[1] He now appeals.

We affirm.

# Issues

Ashley presents the following two restated issues:

I. Whether the trial court abused its discretion in concluding that a recorded police interview was admissible because it contained non-hearsay statements of a coconspirator; and

II. Whether there is sufficient evidence to support Ashley's conviction of Burglary, which required evidence that the crime was committed while armed with a deadly weapon.

# Facts and Procedural History

Before dawn on March 3, 2017, Ashley and Travis Case ("Case") drove out to a rural Waldron property belonging to Donna Scott ("Donna") and Jeff Scott ("Jeff")—Case's mother and stepfather. Donna and Jeff lived on the property, which has a pole barn near their residence. To the east, the property shares a

---

[1] The most serious offense was Burglary, as a Level 2 felony. Ind. Code § 35-43-2-1.

border with a farm supplier known in the area as a co-op. Case did not live with Donna and Jeff, and had been subject to a no-trespassing order since 2016.

[5] Case drove that morning, and parked outside the barn sometime after 4:00 a.m. While Ashley stood in the yard, Case approached the barn and used his phone as a flashlight. Case pulled on a window screen. He then broke a door window, pried the door with a crowbar, and entered the barn. Ashley followed.

[6] Ashley and Case rummaged around the barn, and brought tools out to Case's vehicle. At some point, Ashley went into an upstairs office area while Case remained downstairs. Around this time, Case saw movement in the residence. Knowing that his vehicle would be recognized, Case called out to Ashley several times. When Ashley did not respond, Case left the barn and drove off. Ashley placed calls to Case at 4:44 a.m., 4:54 a.m., and 5:24 a.m. The calls were unanswered and went to voicemail; Case later discovered that he had dropped his phone outside the barn. Around 7:00 a.m., Ashley sent Case a text message: "Come pick me up at the coop behind. Plant. Place." State's Ex. 12.

[7] Donna and Jeff carried out their morning routines, although Donna noticed an unusual light in the yard when she took the dogs out around 5:10 a.m. Around 6:10 a.m., Jeff began leaving for work, and went to the barn where he parks his vehicle. After noticing the broken window and door, Jeff returned to the residence and told Donna, who called the police.

[8] Officer Michael Cleveland ("Officer Cleveland") of the Shelby County Sheriff's Department was among the responding officers. Officer Cleveland walked

through the barn with Jeff, who identified items that were missing and out of place. One missing item was a tactical knife removed from the upstairs office. Nearby, there was a different knife under an office chair. The knife did not belong to Jeff and had not been there the night before.

[9] Donna told police that she suspected Case was the perpetrator, at which point an officer was dispatched to Case's residence. At approximately 7:45 a.m., Officer Cleveland cleared the scene and was ready to finish his shift. Before Officer Cleveland left, another officer arrived and reported that he had seen someone walking in the area. Officer Cleveland then drove off to investigate, and encountered Ashley walking along the road less than a mile away.

[10] Ashley claimed that he had gotten into an argument with his girlfriend, who had kicked him out of the car. Officer Cleveland agreed to drive Ashley to a store in Waldron, but first wanted to make sure that Ashley was not carrying any weapons. Officer Cleveland saw a knife with a six-inch blade on Ashley's side, and asked if Ashley had any other weapons. Ashley said that he had another knife on his waistband. Officer Cleveland began checking for the knife, and when he could not find it, asked Ashley to direct him to the knife without reaching for it. Ashley was adamant that he had another knife, and pointed to his waistband. Officer Cleveland again searched and did not find a knife. Ashley then said that he must have left the knife at home. During this roadside interaction, Officer Cleveland noticed that Ashley had a flashlight with him.

[11]　Meanwhile, an officer dispatched to Case's residence looked up license plate numbers and saw that Ashley's vehicle was one of the vehicles parked outside Case's residence. Law enforcement spoke with Ashley at his residence around 9:09 a.m., and Ashley agreed to come in for an interview later that morning. Around that time, Ashley called his girlfriend Jessie Vogel ("Vogel"). Vogel lived with Tiffany Moore ("Moore"), not far from Case. At some point that morning, Vogel asked Moore to lie about the morning's events. Vogel asked Moore to say that Vogel and Ashley had gone to Walmart, and that they had gotten into a fight that resulted in Ashley being kicked out of the vehicle.

[12]　Ashley, Moore, and Vogel all came in for separate police interviews. During Ashley's interview, he was shown a picture of the knife found upstairs in the barn, under the office chair. Pointing to the picture, Ashley claimed that he wanted to press charges against Case for stealing his knife. As to Moore, when she completed her interview, she went home and found tools on her porch, hidden behind trash. Case later admitted to stashing the stolen property there.

[13]　The State charged Ashley as follows: Count I—Burglary, as a Level 2 felony; Count II—Theft, as a Level 6 felony;[2] Count III—Theft, as a Class A misdemeanor;[3] Count IV—Theft, as a Level 6 felony;[4] and Count V—Criminal

---

[2] I.C. § 35-43-4-2(a).

[3] *Id.*

[4] I.C. § 35-43-4-2(a)(1)(C).

Mischief, as a Class B misdemeanor.[5]  A jury trial commenced on August 7, 2017, with all counts tried to the jury except for Count IV, which was based on a prior conviction.  At trial, Case and Moore were among the State's testifying witnesses.  Although Vogel had been issued a subpoena, she failed to attend the trial, and so the State sought to admit her recorded police interview.  Ashley made a hearsay objection, and the State argued that the interview with Vogel contained a coconspirator's non-hearsay statements.  The trial court then admitted the recorded interview.  In the interview, Vogel initially told a story about going to Walmart and kicking Ashley out of the car.  After additional questioning, Vogel said that Ashley had called and asked her to tell that story.

[14]  The jury found Ashley guilty of all counts tried to it, and the State moved to dismiss Count IV.  Thereafter, the court held a sentencing hearing, and declined to enter judgment of conviction on Count III.  The court entered judgment of conviction on the remaining counts and imposed concurrent sentences that resulted in an aggregate sentence of 18 years with two years suspended.

[15]  Ashley now appeals.

---

[5] I.C. § 35-43-1-2(a).

# Discussion and Decision

## Admission of the Recorded Interview

[16] "The trial court has broad discretion to rule on the admissibility of evidence." *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). "We review its rulings 'for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013)).

[17] Ashley argues that the trial court abused its discretion in admitting Vogel's recorded police interview because the interview contained inadmissible hearsay. Hearsay evidence is admissible only when permitted by the Indiana Rules of Evidence "or other law." Ind. Evidence Rule 802. Ordinarily, hearsay is any statement made out of court and offered to prove the truth of the matter asserted. Evid. R. 801(c). However, Evidence Rule 801(d) specifies that certain statements that would otherwise constitute hearsay are, by rule, not hearsay at all. For example, an opposing party's statement is not hearsay. Evid. R. 801(d)(2). This is so when the opposing party has personally made the statement. Evid. R. 801(d)(2)(A). It is also the case when an opposing party's coconspirator has made the statement. Evid. R. 801(d)(2)(E). Importantly, however, to be admissible under this rule, the coconspirator's statement must be made in furtherance of the conspiracy. *Id.*

[18] In the recorded police interview, Vogel initially provided an alibi for Ashley. Later, however, Vogel said that Ashley had called and asked her to lie. Once Vogel changed stories, her statements did not further any conceivable conspiracy with Ashley. Thus, there are at least portions of the recording that should not have been admitted under the identified rule. Nonetheless, not all error requires reversal; rather, we are to "disregard any error or defect . . . [that] does not affect the substantial rights of the parties." Ind. Trial Rule 61; *see also Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014) ("The erroneous admission of hearsay testimony does not require reversal unless it prejudices the defendant's substantial rights."). To determine whether erroneously admitted evidence has affected the defendant's substantial rights, "we assess the probable impact the evidence had upon the jury in light of all of the other evidence that was properly presented." *Blount*, 22 N.E.3d at 564. "If we are satisfied the conviction is supported by independent evidence of guilt such that there is little likelihood the challenged evidence contributed to the verdict, the error is harmless." *Id.*

[19] Assuming for the sake of argument that the entire recorded interview was inadmissible, there remains ample independent evidence of guilt. Case testified that Ashley participated in the burglary, which they committed in the early morning, sometime between 4:00 a.m. and 5:00 a.m. After ten or fifteen minutes, Case left Ashley behind—and Ashley's phone records indicate that he called Case three times between 4:44 a.m. and 5:24 a.m. Ashley later sent Case an inculpatory text message asking to be picked up at the "coop"—when there was a "co-op" nearby the targeted barn. Not long after that, Ashley was seen

walking less than a mile away, and he told police a story about going to Walmart—a story Moore testified was not true. Moreover, Ashley was not walking along the more direct routes from Moore's and Vogel's residence to Walmart. Ashley also had a flashlight with him—and Donna had observed an unusual light that morning, right around the time Ashley was calling Case. Furthermore, Ashley insisted that he was carrying a second knife—and police found a knife in the upstairs office of the barn, where Case said only Ashley had been. Moreover, Ashley's vehicle was parked in front of Case's residence, and there was stolen property hidden where Ashley's girlfriend lived.

[20] Ultimately, there is little likelihood that the challenged evidence contributed to the verdict. Thus, we conclude that any error in its admission was harmless.

## Sufficiency of the Evidence

[21] Ashley challenges the sufficiency of the evidence supporting his Burglary conviction. "For sufficiency challenges, we neither reweigh evidence nor judge witness credibility." *McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). We consider only the evidence most favorable to the conviction, together with all reasonable inferences that may be drawn from the evidence. *Id.* We will "affirm the conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

[22] Ashley concedes that there was sufficient evidence to convict him of Burglary as a lesser felony. He focuses only on whether the State introduced sufficient

evidence that the crime was "committed while armed with a deadly weapon," which elevates the offense of Burglary to a Level 2 felony. I.C. § 35-43-2-1. A "deadly weapon" is defined, in pertinent part, as any "weapon, device, . . . or other material that in the manner it: (A) is used; (B) could ordinarily be used; or (C) is intended to be used; is readily capable of causing serious bodily injury." I.C. § 35-31.5-2-86(a)(2). A knife is a deadly weapon. *See id.*; *Robinson v. State*, 543 N.E.2d 1119, 1120 (Ind. 1989) (observing that a jury could reasonably conclude that a utility knife was a deadly weapon).

[23] The evidence and reasonable inferences favorable to the conviction indicate that Ashley was armed with two knives while committing the crime—one that he dropped and another that remained on his side. Ashley's arguments to the contrary amount to requests to reweigh the evidence, which we must decline. Rather, we conclude that there is sufficient evidence supporting the conviction.

# Conclusion

[24] Any error in the admission of the recorded interview was harmless. The evidence is sufficient to support the conviction of Burglary as a Level 2 felony.

[25] Affirmed.

Crone, J., and Brown, J., concur.